**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER SCHNEIDER, R-73628, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 15-cv-0070 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DARRYL EDWARDS, Warden, | ) | |
| Taylorville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [1]. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

**I.      Background**

Petitioner Christopher Schneider is an inmate at the Taylorville Correctional Center in the custody of Warden (and Respondent) Darryl Edwards, serving a 14-year sentence for convictions of criminal sexual assault and aggravated domestic battery. Before the Court is Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 ("habeas petition" or "petition") [1] in which he argues that his state convictions should be vacated or set aside because (1) his trial counsel was ineffective for failing to adequately litigate a motion to suppress where Petitioner sought to exclude from trial certain incriminating evidence that was seized from his home during a warrantless police search, and (2) his trial counsel was ineffective for failing to consult with or hire a medical expert to demonstrate that the victim was not sexually assaulted.

Respondent argues that Petitioner's first claim is meritless because even if the evidence in question had been suppressed, there was still ample evidence to convict (*i.e.*, Petitioner did not suffer prejudice as a result of the alleged ineffective assistance). Respondent argues that Petitioner's second claim is procedurally defaulted because Petitioner did not raise it at any stage in his state court proceedings.

Because Respondent concedes that "Petitioner has exhausted his state court remedies for these claims" and that "[t]he petition is timely and none of the claims is barred by the doctrine of nonretroactivity," [13, at 9], the Court will limit its recounting of the facts and procedural history of the case to what is relevant to this petition.

## A.     The Incident

On the night of June 30, 2007, Petitioner and his girlfriend (the victim) got into an argument over whether one of their four children would visit the victim's sister (who lived next door) that night. The argument escalated and Petitioner's anger turned to violence, and over the next several hours Petitioner unleashed a torrent of physical abuses, resulting in significant injuries to the victim. Specifically, Petitioner—who outweighed his victim by approximately 120 pounds—struck the victim with a baseball bat, dislocating her elbow and shattering her forearm into multiple fragments. Petitioner punched the victim, blacking both of her eyes and bloodying her face, telling her that she was going to die. Petitioner bound his victim's hands and feet with a belt, taped her mouth shut, and pushed an electric jigsaw against her throat, threatening to activate it. Lying in pain from the attacks, the victim pleaded with Petitioner to untie her. At one point he locked her in a closet. Eventually the victim was unbound. She showered, and then the couple had (what she referred to at trial as) consensual sex. The victim arrived at the emergency room the following morning where she underwent treatment for her injuries over the next several

days. The victim suffered bruises and abrasions on her face, neck, chest, lower back, and legs; and a cut above her left ear that required stiches. The emergency room physicians conducted testing in response to the victim's claims that she had been sexually abused. She also underwent four separate surgeries to mend the fragmented bones in her forearm. Police apprehended and arrested Petitioner later that morning.

## B.    Motion to Suppress

When the police arrived at Petitioner's residence the morning after the incident (while the victim was in the emergency room), Petitioner fled, resulting in a high-speed car chase, leading to a hostage standoff at Petitioner's uncle's residence. At some point, police received information that one of Petitioner's (and the victim's) four children had been left unsupervised at their residence. Officers entered the home without a warrant, and while they did not find a child, they did discover in plain view a baseball bat, a belt, tape, and saw blades.

In his criminal lawsuit, Petitioner sought to exclude these items from evidence, arguing that they were recovered during a warrantless search of his residence. More specifically, Petitioner argued that exigent circumstances did not support the officers' warrantless entry into his home. The court disagreed, finding that the officers reasonably believed that there was a child unaccounted for inside the residence, thus satisfying the exigent circumstances exception to the warrant requirement.

## C.    Aggravated Domestic Battery

The State's evidence at trial regarding the aggravated domestic battery charge included testimony from the emergency room nurses and physicians who treated the victim the morning after the incident. These individuals testified both as to what the victim reported to them regarding her injuries and what they learned by way of medical examination. The State also

presented photographs of the victim's injuries, including x-rays of her fractured and dislocated bones, and introduced the bat, belt, tape, and saw blades. The State played recorded telephone conversations between Petitioner and the victim wherein he said, "I feel like fucking dog crap, man, I tell you that. I still can't believe I fucking hit your fucking arm, man." The victim herself took the stand (the State presented her as a hostile witness), and she testified that Petitioner hit her with a bat, bound her, held a saw to her neck, and told her that she was going to die. And in closing arguments, Petitioner's attorney conceded the charge: "And yes, he's guilty of aggravated domestic battery, he hit [the victim], the bat landed on her, and he admits to striking her. He's guilty of that." [13-19 at 227.] The jury convicted Petitioner of aggravated domestic battery but found Petitioner not guilty of attempted murder.

### D. Criminal Sexual Assault

The State's evidence at trial regarding Petitioner's sexual assault of the victim came from several sources. First, the emergency room nurses and physicians who treated the victim the morning after the incident all testified that she told them that she had been sexually assaulted. Because of this, the victim received specific treatment (*e.g.*, a so-called "rape kit") used exclusively for victims of sexual assault. The State also relied on a 2008 written statement from the victim, in which she wrote "Chris and I also had sex. I didn't want to, but I didn't know what would happen if I said no." [See 13-18, at 121–22.]

There was also evidence presented at trial indicating that the sex was (or could have been) consensual. First, a pelvic examination conducted by the emergency room physician revealed no trauma (no scratches, contusions, tears, etc.). In addition, the victim flipped on her 2008 written statement and testified at trial that she was not sexually assaulted and that the sex was consensual. When impeached with the 2008 written statement, the victim said that the

statement was obtained through police coercion, and that she did not give that statement voluntarily. Specifically, the victim testified at trial that she was arrested by a state trooper while visiting her mother in Indiana.[1] She was detained for several hours, and eventually picked up by the Lake County sheriff and transported to the Lake County jail, where she was detained for more than one day. During her detention, she was taken to an interview room to write a statement about the incident with Petitioner, which she did (including the statement that she "didn't want to [have sex], but [she] didn't know what would happen if [she] said no"). She testified that she felt pressured to write that statement because she was told that she was going to be in trouble for perjury and a couple of other charges that the police could press against her. The jury nonetheless convicted Petitioner of criminal sexual assault.

## II.     Legal Standards

### A.     Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court. See *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013). Habeas relief "has historically been regarded as an extraordinary remedy, a 'bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). This is because habeas petitions require the district court "essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Habeas relief under § 2254 is a "'guard against extreme malfunctions in the

---

[1] Respondent asserts that the victim fled the state of Illinois in violation of a subpoena. In a recorded conversation between Petitioner and the victim, Petitioner allegedly suggested that the victim leave the state so that the charges against him would be dropped, stating, "without you coming, they have no case." [13, at 5–6.]

state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.2 (1979) (Stevens, J., concurring in judgment)). To obtain habeas relief in federal court, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## B. Ineffective Assistance of Counsel Standard

In order to prevail on an ineffective assistance of counsel claim, Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland v. Washington*, establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." *Strickland v. Washington*, 466 U.S. 688, 694 (1984); see also *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). Both components of the test must be satisfied or the claim must be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

Regarding the performance prong, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight" such that "[i]t is no surprise that such claims almost always fail." *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir. 1991); see also *Strickland*, 466

U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Regarding the prejudice prong, if a court finds an attorney's representation to be unconstitutionally deficient, it must then decide whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (citing *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693).

Review of a trial attorney's performance is "highly deferential," and a district court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324–25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

In addition, a petitioner must also establish that the state court's application of *Strickland* was unreasonable: "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)); see also *Knowles v. Mirzayance*, 556 U.S.

111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (citation and internal quotation marks omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." *Knowles*, 556 U.S. at 123; see also *Burt*, 134 S. Ct. at 13 (reversing the appellate court's "refus[al] to credit a state court's reasonable factual finding" and its "assum[ption] that counsel was ineffective where the record was silent," holding that AEDPA and *Strickland* "do not permit federal judges to so casually second-guess the decisions of their state-court colleagues or defense attorneys").

## III. Analysis

### A. Ineffective Assistance of Counsel: Motion to Suppress

Petitioner alleges in his first ineffective-assistance-of-counsel claim that his trial counsel failed to adequately litigate his claim that the warrantless search of his residence violated the Fourth Amendment. Specifically, Petitioner argues that his trial counsel failed to obtain relevant rebuttal evidence or to interview certain officers who had information that would have discredited testimony from a government witness at that hearing, and that because of these failures the incriminating evidence was not suppressed, ultimately obstructing Petitioner's right to a fair trial. Respondent argues that Petitioner's claim fails to satisfy the prejudice prong of the *Strickland* test because even if the evidence in question had been suppressed, there was still sufficient evidence to convict.

The opinion from the state appellate post-conviction court provides an accurate recounting of the relevant facts and points of law on this motion-to-suppress issue:

> [Petitioner] argues that, had trial counsel properly presented the motion to suppress evidence seized during the warrantless entry into his residence, it would

8

have been granted, and the outcome of the trial likely would have been different. In the warrantless entry of his residence, the police discovered, in plain sight, a baseball bat, tape, a belt, and saw blades, which corroborated the victim's statement to police and medical personnel. Even had this evidence been suppressed, however, the evidence against defendant was overwhelming. The victim stated to the police and medical personnel that defendant had beaten her, hit her with a baseball bat, threatened her life while holding an inoperative electric jigsaw to her neck, and had nonconsensual sex with her. The medical examination of the victim showed that her arm was broken and elbow dislocated, consistent with a strike with a blunt object like a baseball bat. She had evidence of a beating, her neck bore injuries consistent with something like a saw blade pressed to it. Her examination did not reveal injury to her genitals, but she told medical personnel that she did not resist sexual relations even though she did not consent because she was frightened of defendant and what he might do to her. At trial, the victim flipped on her claim of nonconsensual sex, but was substantively impeached with her statements to medical personnel.

In our view, the victim's testimony and the evidence of her medical examination constitute overwhelming evidence supporting defendant's convictions for aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2006)) and criminal sexual assault (720 ILCS 5/12-13(a) (West 2006)). Without the evidence seized, namely, the bat, tape, belt, and saw, the medical examination revealed that the victim had been beaten with something like a bat, breaking her arm and dislocating her elbow, as well as had a sharp, saw-like object pressed to her neck. While the victim refuted her prior statements at trial regarding the sexual assault, the prior statements were admitted as substantive impeachment and testified to by medical personnel. Additional evidence indicated that defendant had spoken with the victim making an inculpatory statement about hitting her with the bat, and about purposefully absenting herself so she would not have to testify. All of this evidence is overwhelming support for defendant's convictions, even in the absence of the challenged items of evidence. *Accordingly, even had the evidence been suppressed, there is no reasonable likelihood that the result of the trial would have been different.* Because defendant cannot show that there is a reasonable likelihood that a successful motion to suppress would have changed his trial's outcome, he cannot show that he was prejudiced by his trial counsel's performance, and his ineffective assistance claim must fail.

*People v. Schneider*, No. 07-CV-2426, 2013 IL App (2d) 120288-U, ¶¶ 4–5 (Ill. App. Ct. Nov. 12, 2013) (emphasis added). Not only does this passage accurately set forth the evidence relevant to this issue, but it also reflects a reasonable application of the *Strickland* prejudice test. As Respondent points out in detail [see 13, at 13–14], the State presented overwhelming evidence to support a conviction for aggravated domestic battery, including testimony from nurses, doctors,

and the victim, as well as photographs and x-rays of the victim depicting the violence; the bat, tape, belt, and saw blades only added detail to an already well-supported story. The Court agrees with the post-conviction appellate court that the outcome of the motion to suppress did not result in prejudice sufficient to satisfy the *Strickland* prejudice requirement.

Two additional facts bear mentioning. First, Petitioner *admitted guilt* on the aggravated domestic battery charge during closing arguments:

> The evidence is clear. And yes, he's guilty of aggravated domestic battery, he hit [the victim], the bat landed on her, and he admits to striking her. He's guilty of that. But he is not guilty of intending to kill her, he's not guilty of the attempt murder, and he's not guilty of having sex with her by the use of force or without her consent.

[13-19, at 227.] In other words, Petitioner conceded his guilt on the aggravated domestic battery charges and instead focused his efforts on combatting the attempted murder charges (for which he was acquitted) and the sexual assault charges (for which he was acquitted in part and convicted in part).[2] Petitioner's concession is yet further evidence that there is no reasonable likelihood that the result of the trial would have been different had the evidence in question been suppressed.

Second, there is no indication that the evidence at issue—*i.e.*, the bat, tape, belt, and saw blades—played any role in Petitioner's sexual assault conviction. To the contrary, the disputed evidence related to the domestic battery and attempted murder charges: Petitioner bound the victim with the belt, taped her mouth, struck her with the bat, and pressed the saw against her neck. The sexual act in question occurred *after* the domestic battery incidents, and did not involve the disputed evidence. Petitioner himself admits that there was no physical evidence supporting the sexual assault conviction, and that the State's case was based on the victim's (and

---

[2] Hypothetically speaking, had the evidence at issue been suppressed, perhaps Petitioner might not have conceded the aggravated domestic battery charges. But based on the abundance of evidence supporting the battery charge (testimony, photographs, etc.), this seems unlikely.

others') testimony and her prior written statement. [5, at 23–26.] As such, it is highly unlikely the suppression of the disputed evidence would have impacted Petitioner's sexual assault conviction, and thus no reasonable likelihood that the result of the trial would have been different.

In combination, the abundance of evidence supporting Petitioner's convictions (even without the disputed evidence) and the reasonableness of the state court's opinion regarding Petitioner's ineffective-assistance-of-counsel claim are sufficient to show a lack of prejudice resulting from the outcome of the motion to suppress hearing. As such, Petitioner's claim that his trial counsel provided ineffective assistance is without merit and must be dismissed.

### B.      Ineffective Assistance of Counsel: Medical Expert

Petitioner's second ineffective-assistance-of-counsel claim relates to his trial counsel's failure to engage with an expert witness regarding whether a sexual assault occurred. Respondent argues that Petitioner procedurally defaulted on this claim by failing to present it in state court, either on direct appeal or in his post-conviction proceedings. See *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008) ("[I]f a specific claim is not presented to the state court when it is required to be, that claim is defaulted."); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (to avoid procedural default, a petitioner must "raise the claim at each level of state court review").

Petitioner does not dispute this, but argues that his procedural default should be excused[3] because of ineffective assistance of counsel (*i.e.*, his default on his ineffective-assistance-of-trial-counsel claim is excused by the ineffective assistance of all subsequent counsel for failing to

---

[3] Procedural default can be excused where the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law or that the failure to review the claim will result in a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Petitioner's waive procedural-default arguments by not raising them. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) ("When a petitioner presents a defaulted claim for federal habeas review, we may consider it only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice. [Petitioner] fails to argue either point, and so we cannot consider his claim." (internal citation omitted)).

raise it) and because he was denied the opportunity to develop the issue in an evidentiary hearing.[4] Petitioner's arguments are unavailing.

Petitioner relies primarily on *Murray v. Carrier*, 477 U.S. 478 (1986), for the premise that "where a procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the state." [14, at 9.] What Petitioner fails to appreciate is that *Murray* also held that "a claim of ineffective assistance [must be] presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489 ("[I]f a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available."); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) ("[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." (quoting *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003))).

In his state proceedings, Petitioner had appointed counsel at trial, on direct appeal, in his post-conviction hearing (not at first, but eventually), and in his post-conviction appeal. In theory, one could attribute Petitioner's procedural default to a chain of successive ineffective attorneys who, one after the other, failed to raise the ineffective assistance of trial counsel and/or the

---

[4] Petitioner references Attachment A of his reply brief [14, at 15] as proof that he "presented the State Courts with an independent claim of ineffective assistance of counsel * * * but the State Courts denied petitioner the opportunity to develop the factual basis of his claim by not conducting an evidentiary hearing." [14, at 12.] Attachment A is a one-page document listing five "constitutional violations." [14, at 15.] Petitioner highlighted #5 on that list, which reads: "Defendants right to effective assistance of trial counsel and appellate counsel was violated by 5th, 6th, and 14th Amendments of Due Process." [14, at 15.] The Court is uncertain as to the origins of this one-page document. Regardless, it does nothing to advance Petitioner's arguments regarding procedural default on the expert-witness issue.

ineffective assistance of all preceding attorneys who also failed to raise the ineffective assistance of trial counsel. "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an 'attractive power for those who like difficult puzzles.'" *Lee*, 328 F.3d at 901 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 458 (2000) (Breyer, J., concurring)). But this overlooks the fact that "[t]he ineffectiveness or incompetence of counsel during * * * State collateral post-conviction proceedings" is non-cognizable in federal habeas proceedings. 28 U.S.C. 2254(i). This provision has been interpreted as precluding ineffective-assistance-of-post-conviction-counsel claims as a basis for excusing procedural default in the collateral post-conviction channel. *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002) ("[I]neffective assistance of post-conviction counsel does not supply 'cause' for the cause-and-prejudice formula under which federal courts sometimes entertain claims that were not properly presented to the state courts."). Thus, under this rubric, the only procedural default that could be forgiven by way of an ineffective-assistance-of-counsel argument amidst Petitioner's chain of defaults is that of Petitioner's appellate counsel on direct appeal (had it been raised in the post-conviction proceedings, which it wasn't), and thus the back-to-back defaults by Petitioner's post-conviction attorneys are fatal to his § 2254 petition.

That being said, in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court articulated an exception to this general rule that would allow a federal habeas court to hear an ineffective-assistance-of-trial-counsel claim despite the petitioner's default on that claim in the state post-conviction proceeding. *Id.* at 1320. The rule articulated in *Martinez* allows the federal court to find "cause" to excuse the default of post-conviction counsel where (1) the ineffective-assistance-of-trial-counsel claim was a "substantial" claim, (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral-review proceeding,

(3) the state collateral-review proceeding was the "initial" review proceeding in respect to the ineffective-assistance-of-trial-counsel claim, and (4) state law requires that the claim "be raised in an initial-review collateral proceeding." *Id.* The idea behind this rule is that a petitioner should have one full and fair opportunity to present an ineffective-assistance-of-counsel claim. In some states (like Arizona), ineffective-assistance claims can only be raised in the first instance in the post-conviction proceeding, and thus if a petitioner has no counsel or ineffective counsel at that stage, then he or she is effectively denied that one full and fair opportunity. In *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Supreme Court extended this rule to apply in states (like Texas) where even though petitioner can (in theory) raise ineffective-assistance claims on direct appeal, the State's procedural framework makes it highly unlikely that in a typical case the petitioner will have a meaningful opportunity to assert that claim on direct appeal. *Id.* at 1921.

But the narrow good-cause exception articulated in *Martinez* and extended in *Trevino* does not apply here because in Illinois—where Petitioner was convicted—defendants can raise ineffective-assistance-of-trial-counsel claims on direct appeal.[5] *People v. Sutherland*, 994 N.E.2d 185, 191 (Ill. App. Ct. 2013); *Toliver v. Pfister*, 2014 WL 4245788, at *5 (N.D. Ill. Aug. 27, 2014) ("Illinois not only allows claims of ineffective assistance of trial counsel to be raised on

---

[5] *Martinez* and *Trevino* addressed "whether a federal habeas court may excuse a procedural default of an ineffective assistance claim when the claim was not properly presented in a state court due to an attorney's errors in an initial-review collateral proceeding." *Martinez*, 132 S. Ct. at 1313; *id.* at 1317–18 ("The right to effective assistance of counsel at trial is a bedrock principle in our justice system. * * * Indeed the right to counsel is the foundation for our adversary system."). While the holdings of those opinions were narrow, if the thrust of *Martinez* and *Trevino* is that a petitioner should have one full and fair (or "meaningful") opportunity to raise an ineffective-assistance-of-trial-counsel claim, and if a petitioner is either pro se or saddled with ineffective assistance throughout his state-court proceedings, then a refusal to extend *Martinez* and *Trevino* would leave that petitioner's claim unheard. See *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013) (extending *Martinez* and *Trevino* to excuse procedural default of ineffective appellate counsel). An expansion of *Martinez* and *Trevino* to this context would not necessary open the floodgates to ineffective-assistance-of-trial-counsel claims in § 2254 petitions because a petitioner would still need to show that there were no breaks in the "default" chain (*i.e.*, if a claim is properly raised and then later defaulted, the chain is broken) and establish *Strickland* violations from all attorneys all along the way. But absent any guidance from the Seventh Circuit or the Supreme Court, the Court is not inclined to extend *Martinez* and *Trevino* in that capacity here.

direct appeal, but has a well-established procedure, known as a "*Krankel* hearing," to facilitate the bringing of such claims on a post-trial motion by allowing (for all but frivolous ineffective assistance claims) for the appointment of counsel and expansion of the record."); *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014) (holding that a Wisconsin prisoner could not benefit from *Martinez* or *Trevino* because Wisconsin allows ineffective-assistance-of-trial-counsel claims on direct appeal).

Because *Martinez* and *Trevino* have not been extended to apply to situations like this— and with Seventh Circuit precedent to the contrary, see *Nash v. Hepp*, 740 F.3d 1075 (7th Cir. 2014)—Petitioner's attempt to cure the procedural defaults on his ineffective-assistance-of-trial-counsel claim by raising a chain of successive ineffective-assistance-of-counsel claims (all for the first time in federal court) cannot succeed. Petitioner procedurally defaulted on this claim.

But even if Petitioner's repeated procedural defaults were excused, that would not save his claim. First, Petitioner's only two references to this purported succession of ineffective attorneys are wholly conclusory (*i.e.*, "Petitioner did not receive effective assistance of counsel," and "petitioner urged his appointed appellate counsel to raise issues of ineffective counsel [but] was refused" [14, at 9]) and at no point does Petitioner delineate the purported shortcomings of his various appointed attorneys, or even mention his post-conviction attorneys. Petitioner cannot excuse multiple layers of procedural default by blanketly alleging that all four of his appointed attorneys were ineffective.

In addition, Petitioner cannot establish that his appellate attorney and post-conviction attorneys "failed to raise an issue that was both obvious and clearly stronger than the issues [they] did raise," so as to satisfy the "performance" prong of the *Strickland* test. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner's purportedly meritorious "issue" is that his trial

counsel should have hired or consulted with a medical expert "to testify or at least to educate counsel on [the] vagaries of [sexual] abuse indicia." [5, at 23.] The general rule in these instances is that the decision of whether to consult with or hire an expert is a strategic or tactical decision left to the discretion of counsel. See *Hinton v. Alabama*, 134 S.Ct. 1081, 1089 (2014) (per curiam) ("The selection of an expert witness is a paradigmatic example of the type of strategic choic[e] that, when made after thorough investigation of [the] law and facts, is virtually unchallengeable." (internal citations and quotation marks omitted)). However, the Seventh Circuit recently held that a trial counsel could have been ineffective by failing to hire an expert where "counsel admitted [that] his failure to reach out to an expert was not a conscious decision—he just did not think to do so." *Thomas v. Clements*, 789 F.3d 760, 768 (7th Cir. 2015) (citing *Woolley v. Rednour*, 702 F.3d 411, 423 (2012) (affording no deference to counsel's strategy choice because "[t]hough we often defer to an attorney's calculated decision to forgo a certain trial strategy, it is undisputed that there was no strategic rationale underlying these errors")).

But this is not an instance, like in *Thomas v. Clements*, where trial counsel simply failed to consider consulting with or hiring an expert. Instead, as Petitioner himself argues, "[trial] counsel essentially conceded that because [the victim] testified that the sexual encounter was consensual * * * a medical expert consultation was not necessary." [5, at 24.] Petitioner also acknowledges that "[trial] counsel essentially conceded since the State's own medical expert Dr. Piotrowski testified [that the victim] had a normal pelvic examin[ation] and no trauma (no scratches, contusions, tears, etc.) there was no need to inquir[e] any further." [5, at 25.] Thus, trial counsel's decision not to hire a medical expert was clearly one of design, as counsel elected to rely upon favorable testimony from the victim and the State's own medical expert instead.

Petitioner cannot establish ineffective assistance as to any of his attorneys on this issue because they did not "fail[] to raise an issue that was both obvious and clearly stronger than the issues [they] did raise"—electing to omit a meritless claim is not ineffective assistance. *Smith*, 565 F.3d at 352; *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) ("[C]ounsel does not render ineffective assistance by failing to pursue arguments that are clearly destined to prove unsuccessful * * *.").

Petitioner also attempts to validate his ineffective-assistance claim based on "the cumulative effect of multiple errors" related to his criminal sexual assault conviction. *Hough v. Anderson*, 272 F.3d 878, 891 n.3 (7th Cir. 2001). Petitioner focuses primarily on a 2008 written statement from the victim to the police stating that Petitioner sexually assaulted her, arguing that his trial counsel was ineffective for failing to hire a handwriting expert to testify that the victim's handwriting demonstrates that the statement was coerced. However, the victim actually testified at trial that her 2008 written statement was not freely or voluntarily given. [5, at 29, 68.] Thus, trial counsel's decision not to hire a handwriting expert to testify that the victim's written statement was not voluntarily given when the victim herself offered that same testimony firsthand is not "outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). Similarly, Petitioner alleges that trial counsel failed to uncover and present evidence regarding how the police treated the victim prior to her writing of the statement to show that the police coerced her into making the statement. [See 5, at 27–30.] But trial counsel elicited an extensive line of questioning on this issue from the victim herself, setting forth the very information that Petitioner alleges was omitted. [See 13-18, at 234–42 (victim testified at trial that the police detained her for hours and that she "fe[lt] pressured to write that statement * * * [b]ecause [she] was told that [she] was going to be in trouble for

perjury and a couple of other charges that [the police] could press against [her]," and that she did not give the statement voluntarily).] Trial counsel reiterated this evidence in closing arguments. [See 13-19, at 232–34 (describing the coercive nature of her custody leading up to the written statement, the police officers' intent to control and influence her with threats of criminal prosecution, and the victim's testimony that her written statement about the sexual assault was not voluntary).] While trial counsel may not have presented all imaginable evidence on this issue, counsel adequately presented the argument. See *United States v. Messino*, 181 F.3d 826, 830–31 (7th Cir. 1999) ("The Sixth Amendment guarantees * * * adequate counsel, not the best possible counsel."). Trial counsel was not ineffective on this ground.

In addition to being procedurally defaulted, Petitioner's second ground for habeas relief is also meritless. The claim is dismissed.

## IV.     Certificate of Appealability

Per Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his

§ 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And in cases where a district court denies a habeas claim on procedural grounds, the court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 485.

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims. Petitioner's first ineffective-assistance claim is clearly meritless under the "doubly deferential" standard of review, see *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013), because, as the post-conviction appellate court noted, even if the evidence had been suppressed, there is no reasonable likelihood that the result of the trial would have been different. And Petitioner's second ineffective-assistance claim is clearly procedurally defaulted. See *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner's claims are without merit and procedurally defaulted, and thus further review is not warranted. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V.     Conclusion

For these reasons, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [1]. The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: October 13, 2015

_____
Robert M. Dow, Jr.
United States District Judge